UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 3:13-cr-153 |
| v. | ) | Judge Aleta A. Trauger |
| DORIAN AYACHE and | ) | |
| THERESA C. VINCENT | ) | |

## MEMORANDUM & ORDER

Defendant Dorian Ayache has filed a Motion to Suppress and Request for *Franks* Hearing (Docket No. 27), to which the government filed a Response in opposition (Docket No. 30), and Ayache filed a Reply (Docket No. 31). Defendant Theresa Vincent also filed a Motion to Suppress and Request for *Franks* Hearing (Docket No. 42), to which the government filed a Response in opposition (Docket No. 54). The court granted the requests for a *Franks* hearing, which took place on February 27-28, 2014. In a March 4, 2013 Order, the court denied both motions, to the extent that they requested relief under *Franks*, but reserved judgment on the issue of overbreadth. (Docket No. 53.) For the reasons stated herein, the court finds that the searches at issue were not overbroad.

## BACKGROUND

On June 24, 2013, the Magistrate Judge issued warrants authorizing searches of each defendant's Yahoo email account for the period from June 1, 2012 through June 23, 2013. The warrant applications were supported by an Affidavit from Department of Transportation ("DOT") Special Agent Tammie Moore.[1] At the conclusion of the *Franks* hearing, the court found that,

---

[1] The Affidavits filed in support of the application for both search warrants are identical. (*See* Docket No. 27, Ex. A, Attachment C; Docket No. 42, Ex. A, Attachment C.) The court will refer to these Affidavits in the singular as the "Affidavit."

1

even after excising ¶ 38 from the Affidavit,[2] the Affidavit otherwise established probable cause with respect to the remaining (non-dismissed) crimes with which Ayache and Vincent are charged, including the remaining counts against one or both defendants under 18 U.S.C. § 371, 18 U.S.C. § 1512(c)(1), and 18 U.S.C. § 1623.[3]  (*See* Docket No. 52, Order.)  The defendants argue that, even if the warrant established some form of probable cause, the authorized searches were overbroad.

## ANALYSIS

"The standard of review for the sufficiency of an affidavit 'is whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'"  *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)).  The Fourth Amendment requires warrants to "particularly describe the place to be searched, and the persons or things to be seized."  U.S. Const. amend IV.  "A general order to explore or rummage through a person's belongings is not permitted.  The warrant must enable the searcher to reasonably

---

[2]In ¶ 38 of her Affidavit, Moore averred that, in response to a grand jury subpoena, Ayache had not produced three emails dated March 20, April 2, and May 7, 2013.  Moore's statement was false: Ayache had produced those three particular emails in response to the grand jury subpoena.  However, at the *Franks* hearing, the government showed that Ayache in fact had not produced three *other* emails in response to the grand jury subpoena – *i.e.*, Moore (recklessly) had the dates wrong in the Affidavit.

[3]On February 14, 2014, the court dismissed Counts One through Nine of the Indictment against Ayache.  (Docket Nos. 35 and 36.)  The remaining charges against Ayache are (1) one count of conspiracy to defraud the United States or one of its agencies or departments for the purpose of impairing, obstructing, and defeating its lawful functions, 18 U.S.C. § 371; and (2) two counts of destroying or attempting to destroy Yahoo emails with the intent to impair their ability for use by the federal grand jury during two different time frames, in violation of 18 U.S.C. § 1512(c)(1).  The remaining charges against Vincent are: (1) conspiracy in violation of 18 U.S.C. § 371; and (2) giving false material declarations to the grand jury concerning her communications with Ayache, in violation of 18 U.S.C. § 1623.

ascertain and identify the things which are authorized to be seized." *United States v. Savoy*, 280 F. App'x 504, 510 (6th Cir. 2008) (citing *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981)). "The particularity requirement eliminates the 'danger of unlimited discretion in the executing officer's determination of what is subject to seizure.'" *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985). "The warrant process is primarily concerned with identifying *what* may be searched or seized – not how – and *whether* there is sufficient cause for the invasion of privacy thus entailed." *United States v. Evers*, 669 F.3d 645, 651 (6th Cir. 2012) (emphases in original) (quoting *United States v. Upham*, 168 F.3d 532, 537 (1st Cir. 1999)).

With respect to electronically stored information, the Sixth Circuit has repeatedly found that searches of computers and other forms of electronic media create "practical difficulties" that require a flexible approach to the application of the particularity requirement. *See, e.g.*, *United States v. Evers*, 669 F.3d at 653-54 ("[A] computer search may be as extensive as reasonably required to locate the items described in the warrant based on probable cause.") (quoting *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011)); *see also United States v. Lucas*, 640 F.3d 168, 178 (6th Cir. 2011). Ultimately, "[a] search warrant must particularly describe the things to be seized, but the description, whose specificity will vary with the circumstances of the case, will be valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Guest v. Leis*, 255 F.3d 325, 337 (6th Cir. 2001); *Evers*, 669 F.3d at 652 ("[A] warrant authorizing the seizure of a defendant's home computer equipment and digital media for a subsequent off-site electronic search is not unreasonable or overbroad, as long as the probable-cause showing in the warrant application and affidavit demonstrate a 'sufficient chance of finding some needles in the computer haystack.'") (quoting *United States v. Upham*, 168 F.3d 532, 537

3

(1st Cir. 1999)).

The Sixth Circuit has rejected an attempt to limit email searches to "particular senders and recipients of e-mail," where limiting the search in that fashion "would hamper the search for evidence tying defendants" to the illegal activity with which they are charged. *United States v. Hanna*, 661 F.3d 271, 287 (6th Cir. 2011) (quoting *United States v. Hanna*, 2008 WL 2478330, at *6 (E.D. Mich. June 17, 2008)). Furthermore, the Sixth Circuit has also looked to whether the temporal scope of an electronic search is tailored to the period of time in which other evidence has suggested that illegal activity occurred. *See Hanna*, 661 F.3d at 287. The government has also identified numerous federal courts that have approved warrants for the seizure of all emails in a defendant's account, where there was probable cause to believe that the email account contained evidence of a crime.[4] Here, aside from the Sixth Circuit's decision in *United States v. Warshak* holding that individuals have a reasonable expectation of privacy in their email account (*see* 631 F.3d 266 (6th Cir. 2010)) – a point not in dispute – the defendants have not identified any cases relating to the issue of email privacy, let alone cases showing that email searches

---

[4]*See United States v. McDarrah*, 2006 WL 1997638, at *2, *9-*10 (S.D.N.Y. July 17, 2008), *aff'd* 351 F. App'x 558 (2d Cir. 2009) (summary order) (search not overbroad, where warrant authorized search of "[a]ll stored electronic mail and other stored content information presently contained in, or on behalf of, the following electronic mail address[]: ps4 alum@aol.com . . ."); *United States v. Bowen*, 689 F. Supp 2d 675, 680-685 (S.D.N.Y. 2010) (searches of all records within defendants' email accounts were not overbroad); *United States v. Hyer*, 2010 WL 2160911 (E.D. Mo. Apr. 29, 2010) (search of defendant's AOL email account for a four-year period for evidence of child pornography was not overbroad, where defendant had uploaded pornography, detective affiant stated that collectors of child pornography often trade images with others, and defendant admitted in police interview that he might have uploaded pornographic images from his AOL e-mail account); *United States v. Deppish*, — F. Supp. 2d —, 2014 WL 349735, at *7 (D. Kan. 2014) (upholding warrant for "all contents" of two Yahoo accounts without time restrictions, where defendants' email addresses were linked to username on child pornography site).

4

should be restricted, as a general matter, to communications between two specific users when there is probable cause to believe that an email account contains evidence of a crime.

Here, disregarding the untrue statements in ¶ 38, the Affidavit establishes as follows:

- Ayache was served with a § 521(b)(5) Imminent Hazard Order on June 28, 2012 ("First IHO") directing him to cease all motor vehicle operations and not to "use lessees, lessors, owner-operators, affiliates, assigns or other commercial motor vehicles or motor carriers to conduct any continued operations." The First IHO directed Ayache to cease using four specific motor vehicles (the "Impounded Vehicles").

- On July 6, 2012, Ayache sold an Impounded Vehicle to a third-party without obtaining written authorization for the transaction.

- On July 16, 2012, with assistance from Ayache, Vincent registered for and received a new DOT number in her own name, d/b/a "Terri's Farm." On that same date, the Tennessee Department of Revenue issued certificates of title to Vincent for two of the Impounded Vehicles, even though Ayache had been prohibited from selling, leasing, or otherwise transferring that equipment without DOT authority. Ayache "actively assisted" Vincent in organizing and operating Terri's Farm.

- Although an individual named Mance Frank Reed stated that he had never given Ayache permission to register a DOT number on his (Reed's) behalf, a DOT application in the name of "Frank Reed" was submitted to the DOT, Ayache's credit card was used to pay for the application, a fictitious name was listed as the "Secretary" of the motor carrier applicant, and Ayache possessed and produced a copy of the DOT application in response to a grand jury subpoena.

- On July 20, 2012, Ayache drove one of the Impounded Vehicles in violation of the First IHO. On July 27, 2012, another individual, Arlin Martin, drove an Impounded Vehicle.

- On July 29, 2012, Larry Montgomery drove one of the Impounded Vehicles on behalf of Terri's Farm.

- On October 12, 2012, Mance Frank Reed drove one of the Impounded Vehicles on behalf of "F R Farm."

- Based on information available to the government as of the date of the Affidavit, "it does not appear that [Ayache] has produced all responsive

5

emails, and evidence shows that he is withholding and concealing responsive emails." Similarly, "it does not appear that [Vincent] has produced all responsive e-mails, and evidence shows that she is withholding and concealing responsive e-mails." For example, information obtained from Yahoo (in response to an order issued under 18 U.S.C. § 2703(d)) reflected that an email was sent from Ayache's account (dgayache@yahoo.com) to Vincent's account (terricvincent@yahoo.com), but neither Ayache nor Vincent had produced this email to the government.

- On August 1, 2012, an email was sent from dgayache@yahoo.com to terricvincent@yahoo.com, attaching an insurance identification card issued to Ayache/Three Angels Farms with respect to an Impounded Vehicle.

- On August 14, 2012, an email was sent from Vincent's account to Ayache's account, proposing a three-party transaction involving one of Ayache's trucks and a $5,000 payment from Vincent as a means to "get back on the road RIGHT NOW." The email also indicated that the transaction would "look like separate deals to DOT."

- On September 6, 2012, an email was sent from Vincent's account to Ayache's, referencing DOT numbers associated with the trucks that Ayache had taken back from Vincent.

Taking these averments collectively, the Affidavit established probable cause to justify a search of all of Ayache's and Vincent's Yahoo emails from June 1, 2012 through June 2013. The Affidavit demonstrates that, starting from the time that Ayache received the First IHO in June 2012, he undertook repeated efforts to flout the IHO's terms, defraud the government, and generally frustrate the DOT's ability to perform its lawful functions, including its role in maintaining public safety through the imposition of § 521(b)(5) IHOs. For example, in violation of the First IHO: Ayache utilized Vincent as a straw applicant for a new DOT registration, transferred his trucks to her, and attempted to resume business operations under her name; Ayache submitted a fictitious application for "F R Farms;" and multiple individuals (Montgomery, Martin, and Reed) were caught driving the Impounded Trucks, indicating that

6

Ayache had disposed of them in some way. The Affidavit also establishes that Ayache and Vincent were using email to communicate about his continued trucking operations in violation of the IHO, that Ayache and Vincent had recently deleted or were otherwise withholding emails from the government's investigation, and that Vincent may have lied about the extent of her contact with Ayache. These facts are sufficient to establish that a search of all of their emails was warranted with respect to the remaining criminal charges, including the counts for conspiracy, obstruction of justice, and/or making false statements to the grand jury.[5] Neither the facts nor the law require that a "reasonable" search should have been limited – artificially – only to emails between Ayache's account and Vincent's. Indeed, with respect to the obstruction of justice charges, it would have been illegal for Ayache or Vincent to withhold any responsive emails from the government, even emails with third parties.

The court also finds that the temporal limitation on the search warrants – June 2012 forward – was reasonable. The Affidavit indicates that, almost immediately after receiving the First IHO in June 2012, Ayache began communicating with Vincent and utilizing her to set up a new business in violation of the First IHO. He continued with his efforts to continue to somehow operate his business into the Fall of 2012, and it was reasonable to suspect that his efforts continued after that. Therefore, the time limitation on the searches was well-tailored to the facts set forth in the Affidavit.

---

[5]The court's conclusion is even stronger with respect to Ayache. Given that Ayache apparently was interacting with multiple individuals in furtherance of his efforts to defraud the government (Vincent, Montgomery, Martin, and Reed) and that he was using his email account to discuss trucking operations with Vincent, there was certainly probable cause to believe that his email account might contain evidence of his conspiratorial efforts involving these other individuals.

In sum, the courts rejects the defendants' arguments that the search warrants were overbroad. Therefore, with respect to the remaining issue of overbreadth, the motions are hereby **DENIED**.

It is so **ORDERED**.

Enter this 10th day of March 2014.

_____
ALETA A. TRAUGER
United States District Judge